ST. LOUIS SOUTHWESTERN RAILWAY COMPANY v. PEARSON.

Opinion delivered November 23, 1908.

1. CARRIERS—CALLING STATION PREMATURELY—COMPENSATORY DAMAGES.— Where the conductor called a station before it was reached, and plaintiffs, relying thereon, got off when the train stopped, and had to walk several miles in the night, they were entitled to recover substantial compensatory damages for any inconveniences, annoyance, sickness or injury directly flowing therefrom. (Page 202.)

2. SAME—CALLING STATION PREMATURELY—EXEMPLARY DAMAGES.—It was error, in an action against a carrier for damages caused by the trainmen calling plaintiffs' station prematurely at night, inducing them to alight before they reached their destination, to instruct the jury that they might award punitive damages if the trainmen, knowing that the train had not arrived at plaintiffs' destination, caused plaintiffs to

leave the train prematurely by representing to them that the train had arrived at such place; there being no evidence of wilfulness, wantonness, or conscious indifference to consequences from which malice will be inferred. (Page 203.)

Appeal from Pulaski Circuit Court, Second Division; *Edward W. Winfield,* Judge; reversed.

*S. H. West* and *Bridges, Wooldridge & Gantt,* for appellant.

1. It was error to submit the question of punitive damages to the jury. "The element of wilfulness or conscious indifference to consequences, from which malice may be inferred, is lacking." 53 Ark. 7; 78 Ark. 331; 87 Ark. 123; 80 Ark. 260.

2. As to Newson, there was no actual damage, as appears by the verdict. Where there is no actual damage sustained, punitive damages are not recoverable. 12 Am. & Eng. Enc. of L. (2 Ed.), 29; 13 Cyc. 109. See also 84 Ark. 42.

*J. H. Harrod,* for appellees.

HILL, C. J.   J. L. Newson and R. P. Pearson were school teachers, teaching school at Hunter, Arkansas. On Friday, the 9th of August, they bought from the station agent at Hunter tickets to Fair Oaks and return. They boarded the train of the appellant railroad company on their return, at Fair Oaks, on the night of August 11th. The train which they boarded did not make a regular stop at Hunter, and the auditor so informed them when he took up their tickets, but they said they did not know that fact, and asked the auditor as an accommodation to stop for them. After consulting the conductor, the auditor agreed to do so, and, according to the plaintiff's statements, about a minute afterwards the conductor called "Hunter!" and the auditor said, "This is Hunter. Get your suit case and be ready to get off." They say the train stopped, and they at once went forward and got off, in the presence of the conductor, auditor and brakeman. They thought they were at Hunter, and got off on the side opposite from the depot because they lived upon that side, and did not know they were not at Hunter until the train had moved. As a matter of fact, they were three miles and a quarter from Hunter. This occurred at 11:20 at night, and they walked into Hunter. Pearson was made ill for a day and incurred a doctor's bill, and Newsom fell off the dump some eight or ten feet when

he got off the train. They brought suit against the railroad company, and their suits were consolidated and tried together. The above is a summary of the testimony which they gave.

The trainmen denied that such an occurence took place as that related by the plaintiffs, in regard to their being notified that they had reached Hunter and their getting off the train in the presence of the conductor, auditor and brakeman, and said that they did not know the plaintiffs were off the train until the train reached Hunter, where it stopped for their accommodation and for no other purpose; and that the conductor and auditor went through the train, looking for them, but failed to find them, and that they then learned for the first time of their having got off. There was also testimony that the train had not stopped after leaving Fair Oaks until it reached Hunter, but that it had slowed down before reaching there on account of some cattle on the track. Hunter is a village containing five or six stores and five or six hundred people.

The court gave instructions which in effect authorized the plaintiffs to recover, if the jury believed their testimony, for actual damages; and also gave an instruction authorizing recovery for punitive damages if the jury found that the employees in charge of the train, knowing it had not arrived at Hunter, caused the plaintiffs to leave the train at a late hour in the night, out in the woods away from any station, by representing to them that the train had arrived at that place.

The jury returned a verdict in favor of Pearson for $10 actual damages and $75 punitive damages, and in favor of Newsom for $75 punitive damages and no actual damages. The railroad company has appealed.

If the plaintiff's testimony is true—and, the jury having accepted it, it must be so treated in this court—they were each entitled to recover some substantial amount for the inconvenience, annoyance, sickness or injury directly flowing from the action of the conductor and auditor in telling them that they had reached Hunter and inviting them to leave the train when in fact they were over three miles from that station, and had to walk to it in the middle of the night. This damage may not be large; certainly the jury did not regard the actual damages of any amount, as the man who was made sick was only given $10 and

the other given nothing; but, however small, it is something more than nominal damages that they are entitled to recover under this view of the testimony.

A different question is presented as to their right to recover punitive damages. "In *Railway* v. *Hall,* 53 Ark. 7, Mr. Justice SANDELS, speaking for the court, in his terse style distinguished the elements of exemplary and compensatory damages, and said of the former that it must contain 'the element of wilfulness or conscious indifference to consequences from which malice will be inferred;' and that 'a careless unsconsciousness of plaintiff's possible danger' was not sufficient to constitute a basis for exemplary damages." *St. Louis, I. M. & S. Ry. Co.* v. *Stamps,* 84 Ark. 241.

The same proposition has been thus stated: "Negligence, however gross, will not justify a verdict for exemplary damages, unless the negligent party is guilty of wilfulness, wantonness, or conscious indifference to consequences from which malice may be inferred." *Arkansas & La. Ry. Co.* v. *Stroude,* 77 Ark. 109; *Choctaw, O. & G. Rd. Co.* v. *Cantwell,* 78 Ark. 331; *Harris Lumber Co.* v. *Morris,* 80 Ark. 260.

The evidence of the plaintiffs fails to show that the train operatives were "guilty of wilfulness, wantonness, or conscious indifference to consequences, from which malice will be inferred." The utmost that their testimony amounts to is that the trainmen were guilty of negligence in notifying them that Hunter had been reached, when as a matter of fact it had not been reached. The trainmen were familiar with the road, or should have been familiar with the road, and should not have invited passengers to alight three miles and a quarter out from the station when ordinary care would have shown that they had not reached the station. This would certainly be negligence—possibly gross negligence—but that is not sufficient upon which to base a recovery for exemplary damages.

It is undisputed that the conductor and auditor agreed to stop the train for them at Hunter as a matter of accommodation. Whether the train stopped before it reached Hunter, and they were invited off, or whether they got off when the train slowed down for the cattle to get off the track, are the disputed matters. It is also undisputed that the train did stop at Hunter for the sole

purpose of letting them off. All these facts show that the trainmen were seeking to accommodate these gentlemen, who had got upon the wrong train; and there is absolutely nothing to show that they were consciously indifferent to the consequences of their alighting from the train away from the station, and nothing to indicate that the train was stopped in the woods for the purpose of putting these men off, away from their destination, in order to inflict upon them inconvenience or annoyance. The utmost this testimony shows is a mistake at the stopping place, and a mistake which the trainmen should have avoided.

The evidence failing to establish the requisite basis for an assessment of punitive damages, it was error for the court to send that issue to the jury. For this error the judgments are reversed and causes remanded for new trial.